F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 202-973-0900
E-mail: psilva@tzlegal.com

Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 530-490-3178
E-mail: wes@almeidalawgroup.com

Margot Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

James Bilsborrow, (N.Y. 4702064)
*Pro hac vice* to be filed
**WEITZ & LUXENBERG PC**
700 Broadway
New York, N.Y. 10003
Telephone: 212-344-5461
E-mail: jbilsborrow@weitzlux.com

[Additional Counsel on Signature Page]

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED RAHMANI and GURGEN GALSTYAN individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THRILLZZ INC. and DOES 1–10,<br><br>Defendants. | Case No. **'25CV2548 RBM KSC**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF**<br><br>**Demand for Jury Trial** |

-1-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs bring the following allegations on behalf of themselves and all others similarly situated, based on their personal knowledge as to the facts pertaining to Plaintiffs, and based on the investigation of counsel and information and belief as to all other allegations:

## I.    INTRODUCTION

1.    Defendant Thrillzz Inc. operates mobile gambling applications and websites ("Gambling Websites") within California, representing to customers and the public that its "Sweepstakes Sportsbook" is a legal form of gambling in California. It is not.

2.    Plaintiffs Jared Rahmani and Gurgen Galstyan, on behalf of themselves and the proposed class of similarly situated Californians, bring this lawsuit to stop the unlawful gambling that occurs on Thrillzz's Gambling Websites in California and to recover the money that Thrillzz has unlawfully taken from them.

## II.    PARTIES

**A.    Plaintiffs.**

3.    At all times relevant to this action, Plaintiff Rahmani was over the age of 18 and was a resident of San Diego County and Orange County, California.

4.    At all times relevant to this action, Plaintiff Galstyan was over the age of 18 and was a resident of Los Angeles County, California.

**B.    Defendants.**

5.    Defendant Thrillzz, Inc. is a Delaware corporation with a principal place of business in Franklin, Tennessee. Thrillzz regularly conducts business within California and this District, including by running the Gambling Websites that are the subject of this litigation.

6.    Does 1–10 are individuals and/or entities who facilitate Thrillzz's unlawful practices described in this Complaint. The identities of Does 1–10 are not presently known to Plaintiffs. The Doe defendants, along with Thrillzz, are collectively referred to in this Complaint as "Defendants" or "Thrillzz."

-2-
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### III.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between class members and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.    This Court has personal jurisdiction over the parties in this matter because Plaintiff Rahmani resides in San Diego County.  Thrillzz regularly conducts business within this District, including by engaging in the unlawful gambling practices that are at the center of this action.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Plaintiff Rahmani resides in San Diego County, and Thrillzz's unlawful actions, which are the subject of this action, occurred in San Diego County, among other locations within California.

10.    Pursuant to California Civil Code Section 1780(d), a declaration from Plaintiff Rahmani is attached as **Exhibit 1** confirming that venue is proper.

### IV.    FACTUAL ALLEGATIONS

**A.    California's Longstanding Ban on Gambling.**

11.    For over 150 years, California has broadly prohibited commercialized gambling.

12.    For example, in 1872, California enacted Penal Code Section 330, which provides in relevant part that "[e]very person who . . . conducts, either as owner or employee . . . *any banking or percentage game* played with . . . *any device*, for money, checks, credit, or other representative of value . . . is guilty of a misdemeanor." CAL. PENAL CODE § 330 (emphasis added).

13.    A "banking game" refers to a situation where the "house" is a participant in the game, taking on all contestants, paying all winners, and collecting from all losers. *See Sullivan v. Fox,* 189 Cal. App. 3d 673, 678 (1987). And a "percentage

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

game" refers to a situation where the house collects a portion of the bets or wagers made by contestants, but is not directly involved in game play. *See id. at* 679.

14.    Similarly, California Penal Code Section 337a prohibits additional conduct, including:

- "*Pool selling* or *bookmaking*, with or without writing, at *any time or place*." CAL. PENAL CODE § 337a(a)(1) (emphasis added).

- "*[R]eceiv[ing], hold[ing], or forward[ing]* . . . in *any manner whatsoever*, any *money . . . staked, pledged, bet or wagered*, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance of *person* or animal, or between *persons*, animals, or *mechanical apparatus*, or *upon the result, or purported result, of any* lot, chance, casualty, *unknown or contingent event whatsoever*." *Id.* at (a)(3) (emphasis added).

- "[A]t *any time or place, record[ing], or register[ing] any bet* or bets, *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of *skill*, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus*, or upon the result, or purported result, *of any* lot, chance, casualty, *unknown or contingent event whatsoever*." *Id.* at (a)(4) (emphasis added).

- "*[O]ffer[ing] or accept[ing] any bet* or bets, or *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus*." *Id.* at (a)(6) (emphasis added).

15.     The terms used in Section 337a have their commonsense meanings. For example, the California Court of Appeal has explained that "'[p]ool selling' is the selling or distribution of shares or chances in a wagering pool," such as when money wagered by all participants is combined into a single pool and the winnings are distributed based on predetermined rules. *See Finster v. Keller*, 18 Cal. App. 3d 836, 846 (1971) (cleaned up). And "'[b]ookmaking' is the making of a betting book and includes the taking of bets, [and] [t]he taking of one bet is sufficient" to constitute "bookmaking." *People v. Thompson*, 206 Cal. App. 2d 734, 739 (1962) (cleaned up).

16.     Similarly, "bet" and "wager" have their commonsense meanings. For example, the Judicial Council of California Criminal Jury Instructions (2025 Edition) provides that a "bet is a wager or agreement between two or more people that if an uncertain future event happens, the loser will pay money to the winner or give the winner something of value. A bet includes a wager made on the outcome of any actual or purported event, including but not limited to any kind of sporting contest." CALCRIM No. 2993, Receiving or Holding Bets (CAL. PENAL CODE § 337a(a)(3)) (cleaned up).[1]

17.     "Bets" and "wagers" include entry fees paid in online sports betting. *Los Angeles Turf Club v. Horse Racing Labs, LLC,* 2017 WL 11634526, at *8 (C.D. Cal. May 15, 2017).

18.     Put simply, a company violates California Penal Code Section 337a when it engages in pool selling, bookmaking, or accepts or records any bets or wagers on the result of any contest and/or any unknown or contingent event whatsoever.[2]

---

[1] Available online at https://www.justia.com/criminal/docs/calcrim/2900/2993/ (last visited September 26, 2025).

[2] While Section 337a violations are reduced to infractions in certain circumstances for non-commercial gambling in amounts below $2,500, the Section 337a reductions expressly do "not apply to . . . [a]ny bet, bets, wager, wagers, or betting pool or pools made online." CAL. PENAL CODE § 336.9(b)(1).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

19.    Moreover, various sections of the California Penal Code prohibit "lotteries" and "games of chance."

20.    For example, Penal Code Sections 320 and 321 make the operation of a lottery unlawful: "Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor"[3] and "[e]very person who sells, gives, or in any manner whatever, furnishes or transfers to or for any other person any ticket, chance, share, or interest, or any paper, certificate, or instrument purporting or understood to be or to represent any ticket, chance, share, or interest in, or depending upon the event of any lottery, is guilty of a misdemeanor."[4] Penal Code Section 319 defines a lottery broadly to include "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known." CAL. PENAL CODE § 319.

21.    Similarly, Penal Code Section 330a makes it unlawful to own or operate any "contrivance, appliance, or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded . . . [that] is won or lost . . . dependent upon hazard or chance." CAL. PENAL CODE § 330a.

22.    And Penal Code Section 337j makes it unlawful to operate a "game of chance" or to "receive, directly or indirectly, any compensation" for operating such a game "*without having first procured . . . all federal, state, and local licenses required by law*." CAL. PENAL CODE § 337j. (emphasis added).

---

[3] CAL. PENAL CODE § 320.

[4] CAL. PENAL CODE § 321.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

23.     In fact, as the California legislature re-affirmed in 2008, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

**B.     Supermajorities of the California Electorate Rejected the Gambling Industry's Attempts to Legalize Sports Betting in 2022.**

24.     In 2022, two ballot initiatives were put to the California voters to legalize certain additional forms of gambling in the state, including various forms of sports betting: Proposition 26 and Proposition 27.

25.     **Proposition 26** was primarily sponsored by California's Native American tribes, and, among other things, would have:

- Legalized in-person sports betting at tribal casinos.
- Allowed additional gambling at tribal casinos, including roulette and dice games like craps.
- Established certain taxes and fees associated with sports betting.

26.     Proposition 26, however, was soundly rejected in November 2022, with approximately 67% of the California electorate voting "no."

27.     **Proposition 27** aimed to legalize online sports betting in California, and was primarily sponsored by the online sports betting industry, with the Washington Post reporting that "the industry ultimately spent $150 million on political ads"[5] in an attempt to legalize online gambling in California.

28.     Among other things, Proposition 27 would have:

- Legalized and regulated online sports betting in California.
- Established a new division within the California Department of Justice to set license requirements and oversee the industry.

---

[5] Gus Garcia-Roberts, *Inside the $400 Million Fight to Control California Sports Betting,* WASH. POST (Nov. 3, 2022), https://www.washingtonpost.com/sports/2022/11/03/prop-26-27-california-sports-betting/ (last visited September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

- Imposed a 10% tax on sports betting revenue and established licensing fees.
- Allocated revenue from online gambling to homelessness prevention.

29.    Proposition 27 was also soundly rejected in November 2022, with 82% of the electorate voting "no," making it one of the largest margins of defeat in California ballot proposition history.

**C.    Thrillzz's California Sports Gambling Operations.**

30.    Thrillzz operates in California through the Gambling Websites, which consist of at least the Thrillzz mobile apps for Android and iOS, along with the website http://thrillzz.com and associated subpages. The primary gambling product that Thrillzz currently offers in California is its "Sweepstakes Sportsbook." Thrillzz represents to its California customers that the Sweepstakes Sportsbook is legal in the state. It is not.

**a.    The Gambling Products Offered by Thrillzz in California.**

31.    The primary gambling product that Thrillzz currently offers in California is "Sweepstakes," sometimes called "Sweepstakes Sportsbook."[6] According to Thrillzz, users who play the Sweepstakes Sportsbook can "enjoy all the excitement of making picks in a safe online environment."[7] Thrillzz claims that "Every correct pick made within the Sweepstakes Sportsbook will give you Tickets, which allow you to keep playing, or redeem to your account."[8]

32.    To play Sweepstakes Sportsbook, users must download the Thrillzz app for iOS or Android onto their mobile phone. From there, users can play in Coins Mode or Promotional Sweepstakes Mode.

---

[6] Thrillzz referred to this product as Sweepstakes Sportsbook at least through June 2025.

[7] https://thrillzz.com/how-it-works/ (last visited September 26, 2025).

[8] https://thrillzz.com/sweepstakes/ (last visited September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

33.    Coins Mode involves using Thrillzz Coins to make picks in the sportsbook. Thrillzz Coins are "also what you win when your predictions are correct."[9] Thrillzz Coins are virtual currencies that can be purchased in the Thrillzz shop but which are not redeemable for cash.

34.    Playing in Sweepstakes Mode, on the other hand, allows users to win cash for successful bets. Users who wish to play in Sweepstakes Mode must complete an ID verification process. After that, users can obtain and bet Sweeps tokens. Users can purchase Sweeps tokens in the Thrillzz Shop[10] or "earn" them for "free" by participating in Promotions, Daily Login Rewards, Special Offers, and other methods.

35.    When a bet made with Sweeps wins, the pool is paid out in Prize Tickets. As Thrillzz explains, "Make picks on your favorite games using your Sweeps, if you are right, you will win Prize Tickets to redeem in the shop or as cash."[11] Thrillzz further explains that "[i]f your predictions are right you'll receive Prize Tickets. These can be redeemed in the shop to buy Thrillzz Coins (P) [sic] that from time to time come with Free Sweepstakes. The other option is to redeem them as cash, at a rate of 1 Prize Ticket = $1. It's that simple, collect, play and redeem."[12]

\

\

\

\

\

\

_____

[9] *Id.*
[10] Sweeps are purchased bundled with Thrillzz Coins for use in Coin Mode.
[11] https://thrillzz.com/sweepstakes/ (last visited September 26, 2025).
[12] https://thrillzz.com/how-it-works/ (last visited September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

36.    Thrillzz offers sports betting based on numerous different sports[13]:



<hr>

[13] The below screenshots were taken in June 2025.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

37.    Within each sport, the user can select their preferred sports team:



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    38.    After the user enables Sweepstakes Mode, the app continues to display

2    the available sporting events that the user can pick to bet on:



3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

39.    For example, here is an example of a Sweepstakes Mode contest that Thrillzz was offering in California on June 27, 2025. Users were presented the option to bet on the outcome of a baseball game between the New York Mets and the Pittsburgh Pirates:



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

2          40.     For baseball, Thrillzz solicits users to place run line and money line bets.

3     Money line wagers are simply choosing the team that will win; the run line refers to

4     the spread.[14] Users can also place bets on the 1st inning winner, total runs, and total

5     runs by team.

6     \

7     \

8     \

9     \

10    \

11    \

12    \

13    \

14    \

15    \

16    \

17    \

18    \

19    \

20    \

21    \

22    \

23    \

24    \

25    \

26

27    _____

[14] *See* BetMGM, *Difference Between Run Line & Moneyline in MLB Betting*, The
28    Roar (May 22, 2025), https://sports.betmgm.com/en/blog/mlb/difference-between-
      run-line-and-moneyline-in-mlb-betting-bm23/ (last visited September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

41. The Gambling Websites show the number of Tickets that will be awarded if a user's wager is successful:



42. Regardless of which contest the user selects, each has the same basic structure: Users pay for Sweeps by buying virtual currency in the Shop, along with other means. Users place bets with Thrillzz regarding the expected future actual performance of athletes (i.e., in the underlying sports games) using Sweeps. Thrillzz

-15-
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

collects the sums wagered by users and pools the bets together into a prize pool. Thrillzz records the bets on its ledger. The underlying sporting event occurs in real life. Thrillzz uses its records and the records from the sporting event to determine the outcome of the contest. Thrillzz pays out the winners from the prize pool in Tickets, which convert 1:1 to dollars. And Thrillzz determines the share of the prize pool of bets that it keeps.

**b.    Thrillzz's Gambling Websites Mirror the Sports Gambling that California has Long Prohibited.**

43.    Thrillzz's Gambling Websites mirrors the very sports gambling that California has long prohibited in many ways.

44.    First, Thrillzz serves as the "house" and by offering "banking games," where Thrillzz is taking on all contestants, paying all winners, and collecting from all losers. *See Sullivan,* 189 Cal. App. 3d at 678.

45.    Second, Thrillzz collects, documents (i.e., books), and holds all bets and wagers, and then Thrillzz uses its records (i.e., its betting book) to determine winners and losers and to calculate payouts that it makes from its own funds (i.e., from the "bank").

46.    Third, the "over" and "under" lines are all set by Thrillzz, just as in traditional gambling operations.

47.    Fourth, by allowing users to "stack" bets and wagers, Thrillzz creates a "parlay" structure, where a user has to correctly select multiple independent outcomes in order to win his bets against Thrillzz.

48.    Fifth, Thrillzz maintains records of all bets and wagers placed on the Gambling Websites, and uses those records (i.e., the betting books) to calculate post-contest payouts.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

49.     Sixth, Thrillzz's gambling products generally involve short periods of participation and are designed to entice multiple rounds of repeat betting over the course of a day, a weekend, or a week.[15]

50.     Finally, Thrillzz offers users the opportunity to enter contests across a multitude of sporting types at the same time. For example, in June 2025, Thrillzz offered its contests for MLB, MLS, World Cup, and tennis, among others.

51.     Ultimately, regardless of which Sweepstakes Sportsbook contest users select, they have no control over the outcome of the game on which they have wagered. The outcome is determined entirely based on athletes' actual in-game performances (i.e., the athletes' performances in the actual sporting events) and are entirely outside the control of the users of Sweepstakes Sportsbook.[16]

52.     Put simply, the outcomes of the Thrillzz's California gambling products, including Sweepstakes Sportsbook contests, offered on the Gambling Websites are contingent and unknown at the time the bets and wagers are made, collected, recorded (i.e., booked), and pooled by Thrillzz. And as a result, Thrillzz violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j.

---

[15] In fact, online sports betting operators are facing lawsuits across the country related to the addictive nature of their online betting platforms. While those claims are not directly at issue in this lawsuit, because California law categorially prohibits Thrillzz under the Penal Code, the California legislature has also expressly noted the addictive nature of gambling: "Gambling can become addictive and is not an activity to be promoted or legitimized as entertainment for children and families." Cal. Bus. & Prof. Code § 19801(c).

[16] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by Thrillzz constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**2.** **Thrillzz Solicits California Users Through a Comprehensive Advertising Campaign that Is Directed at California Consumers.**

53.     Online fantasy sports bet operators spend billions of dollars each year on advertising and marketing.[17]

54.     Thrillzz aggressively markets its products to consumers in California, the largest daily fantasy market in the country. For example, on social media, it boasted that "Californians are using Thrillzz to win real cash on MLB action this summer."

\

\

\

\

\

\

\

\

\

\

\

\

\

---

[17] *How Much Sportsbooks Spend on Marketing (2025 Updated Stats!),* available online at https://www.scaleo.io/blog/how-much-sportsbooks-spend-on-marketing-2024-updated-stats/ (last visited September 26, 2025)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

55.    Here are some recent examples of California-focused ads:







-19-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

56.    Thrillzz also extensively features promotions and referral programs to engage new and existing customers, for example:



57.    Put simply, Thrillzz has a comprehensive marketing and customer solicitation strategy, that includes soliciting new and existing customers to use Thrillzz, including within California.

58.    Those ads work, with Californians using Thrillzz's Gambling Websites to place bets and wagers on Thrillzz's Sweepstakes Sportsbook contests.

59.    Thrillzz's advertisements not only make affirmative misrepresentations (as detailed above), but intentionally, strategically, and willfully fail to disclose that Thrillzz's goods and services are illegal in California—information that any reasonable consumer (including Plaintiffs) would regard as material in their decision to use the Gambling Websites.

**3.    Once Potential Customers Arrive on the Thrillzz Gambling Websites, They Are Repeatedly Assured that Thrillzz Is Lawfully Operating in California.**

60.    Well aware that customers would otherwise refuse to play its gambling contests if they knew and understood those contests violated California criminal law,

-20-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

on its website, Thrillzz repeatedly assures prospective customers that Thrillzz's Sweepstakes Sportsbook is permitted in California.

61.    Thrillzz promises that "we operate legally and follow all applicable state and federal laws."[18]

62.    On its "Play in USA" page, Thrillzz displays a map that identifies California as a location where Thrillzz is legal:



63.    These representations lead users to understand that Thrillzz has carefully reviewed the gambling laws of California and other states and concluded that its products are legal in California.

64.    Plaintiffs' and the Class' (as defined below) reliance on such representations from Thrillzz were entirely reasonable, as Thrillzz effectively holds itself out as an expert on the nuances of gambling law and regulation across the United States.

---

[18] https://thrillzz.com/ (last accessed September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

65.    Thrillzz intentionally and strategically leads—in fact, misleads—consumers into believing that its operation of the Gambling Websites in California is legal.

66.    It is not.

67.    Thrillzz does so not only by making affirmative misrepresentations (as detailed above), but by intentionally, strategically, and willfully failing to disclose that its goods and services are illegal in California—information that any reasonable consumer (including Plaintiffs) would regard as material in their decision to use the Gambling Websites.

**D.    Legalized Sports Gambling Harms Individuals, Families, and Communities**

68.  Studies show that legalized sporting gambling, and especially online sports gambling, harms individual, families, and communities.

69.  In a paper published in 2024, researchers compared the financial health of average consumers living in states that allowed sports gambling with those of states that did not.[19] When compared to non-gambling states, states that allowed sports gambling saw their average consumers' credit score drop by a statistically significant amount while bankruptcies increased 25-30%, and debt transferred to debt collectors climbed 8%.[20] Notably, states that allowed online gambling saw close to three times the decline in credit scores than states that allowed gambling, but not online. Auto loan delinquencies and use of debt consolidation loans also increased.

70.  The harm from legalized sports gambling is not limited to the person placing the bets. Another 2024 study found that when sports betting is legalized, the effect of NFL home team upset losses increases reported intimate partner violence

---

[19] Hollenbeck, *et al.*, *The Financial Consequences of Legalized Sports Gambling* (September 26, 2025). Available at SSRN: https://ssrn.com/abstract=4903302.
[20] *Id*. at 11–14.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

by around 10%.[21] And that the effect was larger in states with mobile betting and where higher bets were placed.

71. Despite these harms, online gambling companies exploit vulnerable consumers through "[s]ystems of rewards and punishments in online gambling products are designed to encourage continued use and attention, additional payments, or other behaviors that are not always beneficial to the user[.]"[22] This often takes the form of push notifications to users' phones or promotions such as "free" bets or sweepstakes entries or limited time increased payments to encourage users to continue to gamble.

72. Several media outlets have chronicled online gambling companies allegedly targeting individuals who were struggling with serious gambling addiction to induce them to continue to bet.[23]

73. The issues associated with online sports betting are likely to be even more pronounced in jurisdictions where online sports betting is illegal. This is because without proper oversight from state regulatory agencies, companies like Defendants

---

[21] Matsuzawa & Arnesen, *Sports Betting Legalization Amplifies Emotional Cues & Intimate Partner Violence* (August 27, 2024). Available at SSRN: https://ssrn.com/abstract=4938642 (last accessed September 26, 2025).

[22] Gainsbury, *et al.*, *Reducing Internet Gambling Harms Using Behavioral Science: A Stakeholder Framework.* Front. Psychiatry 11:598589 (2020) (noting that mobile gaming companies' tactics, driven by sophisticated machine learning models, are highly effective at capturing attention but may also exploit individuals with addictive tendencies by encouraging continued or escalated gambling. The authors advise that these targeted mechanisms must be carefully managed and regulated, as they pose a substantial risk when not balanced with protective measures.).

[23] *See* Jason Quick, *'I Literally Can't Stop.' The Descent of a Modern Sports Fan*, The Athletic (Oct. 14, 2024), https://www.nytimes.com/athletic/5777632/2024/10/14/sports-betting-addiction-problem-fans/ (last accessed September 26, 2025); Kate Linebaugh, *How a Psychiatrist Lost $400,000 on Gambling Apps*, Wall Street Journal, (Mar. 15, 2024) https://www.wsj.com/podcasts/the-journal/how-a-psychiatrist-lost-400000-on-gambling-apps/c91168e8-8add-48bc-8f5f-324fe4680df6 (last accessed September 26, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

may be more inclined to use especially aggravating tactics that induce Californians to take bigger, more disastrous risks.

**E.    Plaintiffs' Experiences.**

74.    At all times relevant to this action Plaintiff Jared Rahmani has resided in Orange County or San Diego County, California.

75.    In or about 2024, in response to advertisements he had seen on television and on Instagram, Plaintiff Rahmani created an account with Thrillzz. Thrillzz represented to Plaintiff Rahmani that the products and services it offered in California were legal.

76.    Since that time, Thrillzz has continued to represent to Plaintiff Rahmani including on the Gambling Websites themselves—that its services are legal in California.

77.    In setting up and using his Thrillzz account, Plaintiff Rahmani expressly relied upon Thrillzz's representations that the services it provides in California are legal.

78.    If Thrillzz had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Rahmani would not have created an account with Thrillzz in California and would not have placed bets while in California through Thrillzz's Gambling Websites.

79.    Since creating his account in or about 2024, Plaintiff Rahmani has lost more than $3,000 to Thrillzz while in California.

80.    If Thrillzz had not solicited bets and wagers from Plaintiff Rahmani while representing that such activities were legal (when, unknown to Plaintiff Rahmani at the time, they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to Thrillzz.

81.    If Thrillzz had not solicited bets and wagers from Plaintiff Rahmani while omitting that such activities were illegal (when, known to Thrillzz at the time,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to Thrillzz.

82.   In Plaintiff Rahmani's experience, Thrillzz serves as the "house," setting the betting lines, taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

83.   Plaintiff Rahmani has gambled with Thrillzz as recently as July 2025, while in California, placing bets that were paid to and kept by Thrillzz.

84.   While Plaintiff Rahmani has now discontinued the use of Thrillzz while in California, he remains interested in online gambling in California, and if it becomes legal, he would resume gambling online in California. Plaintiff Rahmani may be tricked by Thrillzz in the future into engaging in unlawful gambling in California if Thrillzz continues to claim that its practices are legal.

85.   Plaintiff Rahmani's sole reason for setting up an account with Thrillzz and purportedly consenting to Thrillzz's terms of service (which he did not review and was not aware he was purportedly agreeing to at the time of account creation) was to gain access to the gambling services in California offered by Thrillzz that he now understands violate California law.

86.   What Plaintiff Rahmani bargained for was entry into a *legal* gambling contest, but what he received from Thrillzz was entry into an *illegal* gambling contest. Plaintiff Rahmani did not receive the benefit of the bargain, as the illegal entry had substantially less (in fact zero) value than entry into a legal contest. Moreover, if Thrillzz had accurately disclosed the unlawful nature of the gambling service, Plaintiff Rahmani would not have purchased Thrillzz's gambling service.

87.   Said differently, to the extent a contract was formed between Plaintiff Rahmani and Thrillzz, Plaintiff Rahmani's sole reason for entering into that contract was to engage in the unlawful gambling activities that are at issue in this Complaint.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

88. Accordingly, Plaintiff Rahmani's contract with Thrillzz (to the extent any such contract was otherwise ever formed), is void (and was void *ab initio*) pursuant to, among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to any express provision of the law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

89. At all times relevant to this action Plaintiff Gurgen Galstyan has resided in Los Angeles County, California.

90. In or about 2022, in response to advertisements he had seen on television and on Instagram, Plaintiff Galstyan created an account with Thrillzz. Thrillzz represented to Plaintiff Galstyan that the products and services it offered in California were legal.

91. Since that time, Thrillzz has continued to represent to Plaintiff Galstyan including on the Gambling Websites themselves—that its services are legal in California.

92. In setting up and using his Thrillzz account, Plaintiff Galstyan expressly relied upon Thrillzz's representations that the services it provides in California are legal.

93. If Thrillzz had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Galstyan would not have created an account with Thrillzz in California and would not have placed bets while in California through Thrillzz's Gambling Websites.

94. Since creating his account in or about 2022, Plaintiff Galstyan has lost more than $500 to Thrillzz while in California.

95. If Thrillzz had not solicited bets and wagers from Plaintiff Galstyan while representing that such activities were legal (when, unknown to Plaintiff Galstyan at the time, they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to Thrillzz.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

96.    If Thrillzz had not solicited bets and wagers from Plaintiff Galstyan while omitting that such activities were illegal (when, known to Thrillzz at the time, they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to Thrillzz.

97.    In Plaintiff Galstyan's experience, Thrillzz serves as the "house," setting the betting lines, taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

98.    Plaintiff Galstyan has gambled with Thrillzz as recently as July 2025, while in California, placing bets that were paid to and kept by Thrillzz.

99.    While Plaintiff Galstyan has now discontinued the use of Thrillzz while in California, he remains interested in online gambling in California, and if it becomes legal, he would resume gambling online in California. Plaintiff Galstyan may be tricked by Thrillzz in the future into engaging in unlawful gambling in California if Thrillzz continues to claim that its practices are legal.

100.    Plaintiff Galstyan's sole reason for setting up an account with Thrillzz and purportedly consenting to Thrillzz's terms of service was to gain access to the gambling services in California offered by Thrillzz that he now understands violate California law.

101.    What Plaintiff Galstyan bargained for was entry into a *legal* gambling contest, but what he received from Thrillzz was entry into an *illegal* gambling contest. Plaintiff Galstyan did not receive the benefit of the bargain, as the illegal entry had substantially less (in fact zero) value than entry into a legal contest. Moreover, if Thrillzz had accurately disclosed the unlawful nature of the gambling service, Plaintiff Galstyan would not have purchased Thrillzz's gambling service.

102.    Said differently, to the extent a contract was formed between Plaintiff Galstyan and Thrillzz, Plaintiff Galstyan's sole reason for entering into that contract was to engage in the unlawful gambling activities that are at issue in this Complaint.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

103.    Accordingly, Plaintiff Galstyan's contract with Thrillzz (to the extent any such contract was otherwise ever formed), is void (and was void *ab initio*) pursuant to, among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to any express provision of the law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

**F.    Thrillzz's Misrepresentations Have Tolled the Statute of Limitations.**

104.    As detailed above, Thrillzz has consistently and explicitly represented to the public and its customers, including Plaintiffs and the Class (as defined below), that its operation of the Gambling Websites in California is permissible and legal.

105.    Among other things, Thrillzz has held itself out as an authority on gambling law and regulations, and induced Plaintiffs and the Class to rely on its false representations and statements to secure Plaintiffs and the Class's use of the Gambling Websites and to keep Plaintiffs and the Class using the unlawful Gambling Websites in California.

106.    As a direct and proximate result of Thrillzz's misrepresentations and statements, Plaintiffs and the Class had no reason to believe that operation of the Gambling Websites was unlawful. In fact, just the opposite. They trusted and relied upon the purported expertise of Thrillzz in California gambling law and regulation.

107.    Plaintiffs and the Class were unable to discover—and in fact, did not discover—the true and unlawful nature of the Gambling Websites on their own, as, on information and belief, Thrillzz and others in the online gambling industry have inundated the internet and other publicly available resources (e.g., news articles and legal blogs) with claims that daily fantasy sports betting contests and other betting contests are legal in California.

108.    When Plaintiffs did finally learn the true unlawful nature of the Gambling Websites' operation in or about July of 2025, Plaintiffs filed this lawsuit.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**G.    Thrillzz Acted with Malice, Oppression, and Fraud.**

109.    As detailed in this Complaint, Thrillzz has acted with malice, oppression, and fraud.

110.    Thrillzz acted with malice, because, among other reasons and as otherwise detailed in this Complaint, Thrillzz's conduct was despicable and was done with a willful and knowing disregard of the rights of the public, Plaintiffs, and the Class (as defined below) because Thrillzz knew (or should have known) that its gambling operations in California were illegal, but despite that induced Plaintiffs and the Class to gamble and lose money through its Gambling Websites while in California. As the California legislature has repeatedly made clear, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

111.    Thrillzz's conduct was oppressive because, among other reasons and as otherwise detailed in this Complaint, it was despicable and subjected Plaintiffs and the Class to cruel and unjust hardship in knowing disregard of their rights, including by falsely inducing them to lose significant sums of money through the illegal gambling enterprise that Thrillzz held out as being legal in California.

112.    Thrillzz's conduct was fraudulent, because, among other reasons and as otherwise detailed in this Complaint, Thrillzz intentionally misrepresented and concealed the true nature of its unlawful gambling enterprise from Plaintiffs and the Class by affirmatively representing that the Gambling Websites and associated contests were permissible and legal in California when Thrillzz knew (or should have known) that such contests were not.

**H.    No Adequate Remedy at Law.**

113.    Plaintiffs and the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of Defendants' violation of law and wrongful conduct alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and

-29-

class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Further, damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

114.   Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from his use of the Gambling Websites is determined to be an amount less than paid to use the Gambling Websites. Without compensation for the full amount paid, Plaintiffs would be left without the remedy he is entitled in equity.

**I.     Plaintiffs' Claims Are Not Subject to Arbitration.**

115.   Plaintiffs' sole reason for setting up their accounts with Thrillzz and purportedly consenting to Thrillzz's terms of service (which they did not review and were not aware they were purportedly agreeing to at the time of account creation or otherwise) was to gain access to the gambling services in California offered by Thrillzz that they now understand violate California law.

116.   Said differently, to the extent a contract was formed between Plaintiffs and Thrillzz, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

117.   Accordingly, Plaintiffs' contract with Thrillzz (to the extent any such contract was otherwise ever formed) is void (and was void *ab initio*) pursuant to,

among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."[24]

118. Moreover, even if a valid contract were otherwise formed (it was not) and was enforceable (it is not), under the plain terms of that supposed contract, numerous matters that are at issue in this action are excluded from arbitration and must be resolved by this Court *first* before any claims can be arbitrated:

> Notwithstanding the parties' decision to resolve all disputes through arbitration each party retains the right to . . . seek a declaratory judgment, injunction, or other equitable relief in a court of competent jurisdiction regarding whether a party's claims are time-barred or may be brought in small claims court. Seeking such relief shall not waive a party's right to arbitration under this Arbitration Agreement, and any filed arbitrations related to any action filed pursuant to this paragraph shall automatically be stayed pending the outcome of such action.[25]

Here, among other things, in their Third Cause of Action (below), Plaintiffs, on behalf of themselves and the Class (as defined below), seek a declaratory judgment: (1) that Thrillzz's operation of the Gambling Websites within California violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j; (2) that Thrillzz's contract with Plaintiffs and the Class (to the extent any were formed) are void or voidable, including, without limitation, pursuant to California Civil Code Section 1667; (3) determining the applicable statute of limitations for

---

[24] Plaintiffs expressly reserve their rights to contest the Thrillzz's Terms of Use on additional and separate grounds in response to any motion brought by Thrillzz or otherwise.

[25] Thrillzz Terms of Use dated July 25, 2025, at ¶ 21.3, available online at https://thrillzz.com/terms-of-use/ (last visited August 1, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

claims raised by Plaintiffs and the Class;[26] and (4) finding that Plaintiffs cannot be required to pursue their claims in small claims court.

## V. **CLASS ALLEGATIONS**

119. This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure Rule 23, including, without limitation, Sections (b)(1), (b)(2), and (b)(3) of Rule 23.

120. Plaintiffs seek certification of the following class (the "Class"):

> All residents of California who placed a bet or wager on the Gambling Websites while in California.

121. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

122. Defendants' practices have resulted in actual injury and harm to the Class members in the amount of deposits made with Thrillzz and/or losses incurred on the Gambling Websites for bets or wagers placed while in California.

---

[26] In its Terms of Use, Thrillzz contends that any claims against it are subject to a one-year statute of limitation period. Thrillzz Terms of Use dated July 25, 2025 at ¶ 23.4, available online at https://thrillzz.com/terms-of-use/ (last visited August 1, 2025). Plaintiffs, as detailed in Section IV.F above, contend that all statutes of limitations periods have tolled, and alternatively, Plaintiffs state that the applicable statute of limitations period is four years for claims arising under California's unfair competition law (First Cause of Action, below) and three years for claims arising under California's Consumer Legal Remedies Action (Second Cause of Action, below), not one year, as claimed by Thrillzz. Accordingly, a present dispute exists between Plaintiffs and Thrillzz as to applicable limitations period.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

123.  Plaintiffs reserve their right to amend, add to, modify, and/or otherwise change the proposed class definition as discovery in this action progresses.

124.  **Numerosity.** Plaintiffs are informed and believe that there are hundreds of thousands or potentially millions of members of the Class. The Class is so large that the joinder of all of its members is impracticable. The exact number of members of the Class can be determined from information in the possession and control of Defendants.

125.  **Commonality.** Defendants have acted or refused to act on grounds that apply generally to the Class. Absent certification of the Class, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Defendants and/or Plaintiffs and the Class. Numerous common issues of fact and law exist, including, without limitation:

a.  What gambling contests Defendants offer in California.

b.  What mediums (e.g., website, app, in person, etc.) Defendants offer their gambling contests through in California.

c.  The dates and number of gambling contests offered by Defendants in California.

d.  Whether Defendants violate California Penal Code Section 319 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

e.  Whether Defendants violate California Penal Code Section 320 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

f.  Whether Defendants violate California Penal Code Section 321 by operating the Gambling Websites in California and allowing

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

California residents to place bets and wagers on the Gambling Websites.

g.   Whether Defendants violate California Penal Code Section 330 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

h.   Whether Defendants violate California Penal Code Section 330a by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

i.   Whether Defendants violate California Penal Code Section 337a by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

j.   Whether Defendants violate any additional sections of the California Penal Code or other applicable California law and/or regulation by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

k.   Whether Defendants' violations of the California Penal Code give rise to liability under California's unfair competition law.

l.   Whether Defendants are a "person" within the meaning of Section 1761(c) of the California Consumer Legal Remedies Act ("CLRA").

m.   Whether Plaintiffs and the Class are "consumers" within the meaning of Section 1761(d) of the CLRA.

n.   Whether Defendants' practices violate the CLRA;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

o.    Whether Defendants' operation of the Gambling Websites should be enjoined in California.

p.    The appropriate monetary model for calculating equitable restitution and/or equitable disgorgement.

q.    Whether Defendants' affirmative misrepresentations that the Gambling Websites are legal tolled any otherwise applicable statutes of limitations.

r.    Whether any subset of claims held by the Class are barred by the statute of limitations.

s.    Whether Defendants' Terms of Service are valid and enforceable.

t.    Whether Plaintiffs and the Class can be forced to pursue their claims in small claims court.

126.    **Predominance.** These common issues predominate over individualized inquiries in this action because centers around conduct that Defendants engaged in and/or legal conclusions from such conduct, and Defendants' liability for its actions can be established as to all members of the Class as discussed herein.

127.    **Typicality.** Plaintiffs' claims against Defendants and experience with Defendants are typical, if not identical, to the claims and experiences of members of the Class because, among other reasons, Plaintiffs' claims arise from Defendants' practices that are applicable to the entire Class.

128.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class, as Plaintiffs and each member of the Class lost money to Defendants. Plaintiffs also have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class

-35-

and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

129.  **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Class to receive equitable monetary relief; the equitable monetary relief suffered by members of the Class may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Class may be unaware that they have equitable recourse for the conduct alleged herein; and because issues common to members of the Class can be effectively managed in a single proceeding. Plaintiffs and their counsel know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

130.  Plaintiffs reserve the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## VI.   CAUSES OF ACTION

**A.   First Cause of Action: Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, ("UCL") on Behalf of Plaintiffs and the Class.**

131.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 130, inclusive, of this Complaint.

132.  Defendants, Plaintiffs, and Class are "persons" within the meaning of the UCL.

133.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

134.  Defendants' practices of operating the Gambling Websites within California are "unlawful" within the meaning of the UCL because, among other things, the operation of the Gambling Websites violates California Penal Code

Sections 319, 320, 321, 330, 330a, 337a, and 337j because, among other reasons, in the course of business and in the course of trade and commerce, Defendants have:

a.  Operated illegal lotteries and/or games of chance in violation of Penal Code Sections 319, 320, 321, 330a, and 337j by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.[27]

b.  Operated banking and/or percentage gambling games in violation of Penal Code Section 330 by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.

c.  Engaged in pool selling in violation of Penal Code Section 337(a)(1) by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.[28]

d.  Engaged in bookmaking in violation of Penal Code Section 337(a)(1) by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.

e.  Violated Penal Code Section 337(a)(3) by "receiv[ing], hold[ing], or forward[ing] . . . money . . . staked, pledged, bet or wagered . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or

---

[27] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by Thrillzz constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

[28] Plaintiffs expressly state their allegation of "pool selling" as an alternative to their "banking game" allegation, to the extent there is any inconsistency between these allegations.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.

     f.     Violated Penal Code Section 337(a)(4) by "record[ing], or register[ing] any bet or bets, wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.

     g.     Violated Penal Code Section 337(a)(6) by "[o]ffer[ing] or accept[ing] any bet or bets, or wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus" by operating the Gambling Websites and Sweepstakes Sportsbook contests in California.

135. Defendants' operation of the Gambling Websites within California is also unlawful within the meaning of the UCL because Defendants have violated the CLRA, as alleged in the Second Cause of Action, below.

136. Defendants' operation of the Gambling Websites within California is also unlawful within the meaning of the UCL because Defendants have violated the California Business and Professions Code, because "no person in this state has a right

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

137. The acts and practices of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL because Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

138. Defendants have, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by tricking consumers into believing operation of the Gambling Websites are lawful in California, when in fact, they are not, causing Plaintiffs and the Class to be tricked out of tens of millions of dollars.

139. Defendants have, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by failing to disclose that their products and services are illegal and California—information which any reasonable consumer (including Plaintiffs) would regard as material in their decision to use Gambling Websites. These material omissions caused Plaintiffs and the Class to be tricked out of tens of millions of dollars that they would not have paid to Thrillzz if all material information had been accurately disclosed by Defendants. This information was uniquely in Defendants' control and was not available or reasonably discoverable by Plaintiffs or the Class.

140. Plaintiffs and the Class have suffered injury in fact—in the form of all amounts paid to Defendants and/or the total of net losses on the Gambling Websites run by Defendants for bets placed within California—as a result of Defendants' unlawful and unfair business acts and practices and are at substantial risk of continuing to lose money and be injured by those acts and practices if the practices are not enjoined.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

141.   Plaintiffs seek all available remedies under the UCL, including an order providing restitution and/or disgorgement in the form of all amounts paid to Defendants by Plaintiffs and the Class and/or the total of net losses on the Gambling Websites by Plaintiffs and the Class for bets placed within California.

142.   Plaintiffs further seek an order enjoining the unlawful practices.

143.   Plaintiffs and members of the proposed Classes have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

144.   Plaintiffs and the Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the Class seek to enforce "an important right affecting the public interest" in bringing this UCL claim and this action.

**B.    Second Cause of Action: Violation of California's Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.*, on Behalf of Plaintiffs and the Class.**

145.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 130, inclusive, of this Complaint.

146.   At all relevant times, Plaintiffs and Class members were "consumers" within the meaning of the CLRA, as they were individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

147.   Defendants' conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA, namely the selling of the unlawful gambling goods and services that are at issue in this action through the Gambling Websites.

148.   Defendants have, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by failing to disclose that their goods and services are illegal and California—information

-40-

which any reasonable consumer (including Plaintiffs) would regard as material in their decision to use Gambling Websites. These material omissions caused Plaintiffs and the Class to be tricked out of tens of millions of dollars that they would not have paid to Defendants if all material information had been accurately disclosed by Defendants. This information was uniquely in Defendants' control and was not available or reasonably discoverable by Plaintiffs or the Class.

149.    Defendants violated the CLRA by, among other things:

    a.    "Misrepresenting the source, sponsorship, approval, or certification of goods or services" (a)(2);

    b.    "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

    c.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" (a)(5);

    d.    "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (a)(7);

    e.    "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

    f.    "Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction" (a)(17); and

    g.    "Inserting an unconscionable provision in the contract" (a)(19).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

150.  Defendants' actions, misrepresentations, and omissions were material, and Defendants' violations of the CLRA were a substantial factor in causing Plaintiffs and the Class to lose money.

151.  As a direct and proximate consequence of these actions, misrepresentations, and omissions, Plaintiffs and the Class suffered injury.

152.  Defendants' actions, misrepresentations, and omissions were malicious, fraudulent, and wanton in that they intentionally and knowingly provided misleading information to Plaintiffs and the Class for Defendants' own benefit to the detriment of Plaintiffs and the Class.

153.  The CLRA provides robust enforcement tools for consumers, including:

    a.  Prohibiting the waiver of any substantive rights provided for under the CLRA. *Id.* § 1750

    b.  Requiring that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

    c.  Establishing a substantive right to litigate in the forum where the transaction occurred and/or where the consumer lives. *Id.* § 1780(d).

    d.  Establishing a substantive right to pursue class claims. *Id.* § 1781; *see also id.* § 1752.

    e.  Authorizing injunctive relief. *Id.* § 1780(a)(2)

    f.  Authorizing actual damages. *Id.* § 1780(a)(1).

    g.  Authorizing restitution of unlawfully taken sums. *Id.* § 1780(a)(3).

    h.  Authorizing punitive damages. *Id.* § 1780(a)(4).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

i.    Authorizing statutory damages of $1,000 per violation. *Id.* § 1780(a)(1).

j.    Authorizing statutory damages of $5,000 per injured individual, where the unlawful conduct was directed against the elderly or the disabled. *Id.* § 1780(b)(1).

k.    Requiring that the Court "shall award court costs and attorney's fees to a prevailing plaintiff in litigation." *Id.* § 1780(e).

154.  Plaintiffs seek all available remedies under the CLRA, except that, at this time, Plaintiffs do not seek any monetary damages for their CLRA cause of action.[29]

**C.   Third Cause of Action: Declaratory Judgment, 28 U.S.C. § 2201, on Behalf of Plaintiffs and the Class.**

155.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 130, inclusive, of this Complaint.

156.  The Declaratory Judgement Act, 28 U.S.C. § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

157.  An actual, present, and justiciable controversy has arisen between Plaintiffs and the Class (on the one hand) and Defendants (on the other hand) regarding whether: (1) Defendants' operation of the Gambling Websites within California violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j; (2) Defendants' contracts with Plaintiffs and the Class (to the extent any were formed) are void or voidable, including, without limitation, pursuant to California Civil Code Section 1667; (3) the applicable statute of limitations for

---

[29] Pursuant to Section 1782(d) of the CLRA, Plaintiffs expressly reserve their right to amend their CLRA cause of action to add claims for monetary relief, including, without limitation, for actual, punitive, and statutory damages, at least 30 days after providing Thrillzz the notice contemplated by Section 1782(a).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

claims raised by Plaintiffs and the Class; and (4) Plaintiffs and the Class are required to pursue their claims in small claims court.

158.   Plaintiffs seek a declaration in their favor on behalf of themselves and the Class that: (1) Defendants' operation of the Gambling Websites within California violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j; (2) Defendants' contracts with Plaintiffs and the Class (to the extent any were formed) are void or voidable, including, without limitation, pursuant to California Civil Code Section 1667; (3) the applicable statute of limitations for claims raised by Plaintiffs and the Class has been tolled since the inception of Defendants' commencement of operations in California and/or in the alternative, that Plaintiffs' and the Class's First Cause of Action is subject to a four year limitations period and their Second Cause of Actions is subject to a three year limitations period; and (4) Plaintiffs and the Class are not required to pursue their claims in small claims court.

**D.    Fourth Cause of Action: Violation of Penal Code section 496(c), on Behalf of Plaintiffs and the Class.**

159.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 130, inclusive, of this Complaint.

160.   As alleged above, Thrillzz's advertisements induced Plaintiffs Rahmani and Galstyan to wager significant amounts of money via the Gambling Applications on the false pretense that Thrillzz's sports betting platform was legal in California. Defendants' purpose in making these false pretenses was to illegally take money from Plaintiffs.

161.   Pursuant to California Penal Code section 496(a) receiving property "that has been obtained in any manner constituting theft" is a criminal offense punishable by imprisonment. Pursuant to California law, procuring funds by false pretenses constitutes a violation of Section 496(a). Pursuant to Section 496(c), any person that violates Section 496(a) is liable for three times the actual damages as well as attorney's fees.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

162.   Defendants conduct alleged above constitutes a violation of Penal Code section 496(a) entitling Plaintiffs to the relief provided by Section 496(c) including treble damages and reasonable attorney's fees.

## VII.   **PRAYER FOR RELIEF**

163.   Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a.   Certifying the proposed Class pursuant to Rule 23, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

b.   Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

c.   Finding that Defendants have committed the violations of law alleged herein;

d.   Declaring and resolving the disputed points raised in the Third Cause of Action;

e.   Providing for any and all injunctive relief the Court deems appropriate;

f.   Awarding monetary relief, including but not limited to restitution in an amount that the Court or jury will determine, in accordance with applicable law;

g.   Providing for any and all other equitable monetary relief the Court deems appropriate;

h.   Awarding Plaintiffs their reasonable costs and expenses of suit, including attorney's fees;

i.   Awarding pre- and post-judgement interest to extent the law allows; and

j.   Providing such further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Respectfully submitted,

Dated: September 26, 2025

s/ F. Peter Silva II
F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 202-973-0900
E-mail: psilva@tzlegal.com

Katherine M. Aizpuru (D.C. 1022412)
*pro hac vice* to be filed
Robert M. Devling (D.C. 1781150)
*pro hac vice* to be filed
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., N.W.
Suite 1010
Washington, D.C. 20006
Telephone: 202-973-0900
E-mail: kaizpuru@tzlegal.com
E-mail: rdevling@tzlegal.com

Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Christopher Nienhaus (D.C. 90008585)
*pro hac vice* to be filed
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave
Chicago, IL 60614
Telephone: 708-529-5418
E-mail: chris@almeidalawgroup.com

Margot Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

James Bilsborrow (N.Y. 4702064)
*pro hac vice* to be filed
Michael Piggins (Mich. P81240)
*pro hac vice* to be filed
**WEITZ & LUXENBERG PC**
700 Broadway
New York, N.Y. 10003
Telephone: 212-344-5461
E-mail: jbilsborrow@weitzlux.com
E-mail: mpiggins@weitzlux.com

*Counsel for Plaintiffs and the Proposed Class*

-46-

## VIII.    DEMAND FOR TRIAL BY JURY

Plaintiffs, on behalf of themselves and the putative Class, hereby respectfully demands a trial by jury on all claims for which a jury trial is available.

Dated: September 26, 2025

s/ F. Peter Silva II
_____
F. Peter Silva II, SBN 348070
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 202-973-0900
E-mail: psilva@tzlegal.com

Katherine M. Aizpuru (D.C.: 1022412)
*pro hac vice* to be filed
Robert M. Devling (D.C.: 1781150)
*pro hac vice* to be filed
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., N.W.
Suite 1010
Washington, D.C. 20006
Telephone: 202-973-0900
E-mail: kaizpuru@tzlegal.com
E-mail: rdevling@tzlegal.com

Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

Christopher Nienhaus (D.C.: 90008585)
*pro hac vice* to be filed
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave
Chicago, IL 60614
Telephone: 708-529-5418
E-mail: chris@almeidalawgroup.com

Margot Cutter, SBN 306789
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: 916-290-9400
E-mail: mcutter@cutterlaw.com

James Bilsborrow (N.Y.: 4702064)
*pro hac vice* to be filed
Michael Piggins (Mich.: P81240)
*pro hac vice* to be filed
**WEITZ & LUXENBERG PC**
700 Broadway
New York, N.Y. 10003
Telephone: 212-344-5461
E-mail: jbilsborrow@weitzlux.com
E-mail: mpiggins@weitzlux.com

*Counsel for Plaintiffs and the Proposed Class*

-47-